IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA


UNITED STATES OF AMERICA,          )      4:15CR3022
                                   )
          Plaintiff,               )
                                   )  Lincoln, Nebraska
     vs.                           )  July 31, 2015
                                   )  3:24 p.m.
ANTHONY JAMES HORTON,              )
                                   )
          Defendant.               )



TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

BEFORE THE HONORABLE CHERYL R. ZWART

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:      Mr. Steven A. Russell
                        U.S. ATTORNEY'S OFFICE-LINCOLN
                        100 Centennial Mall North
                        Suite 487, Federal Building
                        Lincoln, Nebraska 68508


For the Defendant:      Mr. Michael H. Hansen
                        FEDERAL PUBLIC DEFENDER'S
                        OFFICE-OMAHA
                        222 South 15th Street
                        Suite 300N, One Central Park Plaza
                        Omaha, Nebraska 68102


Proceedings transcribed from audiotape, transcript produced
with computer.

I-N-D-E-X

|  | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|

GOVERNMENT'S WITNESSES:

   None

DEFENDANT'S WITNESSES:

   None

EXHIBITS:                                        OFFERED    RULED

   None

                                                  PAGE

FINDINGS OF THE COURT................................... 23

CERTIFICATE OF TRANSCRIBER............................... 24

(On July 31, 2015, at 3:24 p.m., the following proceedings were held:)

THE COURT:  We're on the record in Case No. 4:15CR3022, United States of America versus Anthony James Horton.  Counsel, please enter your appearance.

MR. RUSSELL:  Your Honor, please enter the appearance of Steven Russell on behalf of the United States.

MR. HANSEN:  Michael Hansen for Mr. Horton, Your Honor.  Excuse me.

THE COURT:  Mr. Horton, you're here today because I've been told that you want to enter a plea of guilty; is that true?

THE DEFENDANT:  Yes.

THE COURT:  I need to explain to you, sir, that I am not your sentencing judge and I'm not the judge who will determine whether your guilty plea is accepted and whether your plea agreement is accepted.  Those matters will be taken up by Judge Kopf who is your sentencing judge.  But what I can do for you today is gather some information from you and make a recommendation to Judge Kopf on those issues.  Do you agree to proceed before me?

THE DEFENDANT:  Yes.

THE COURT:  Please raise your right hand.

ANTHONY JAMES HORTON, DEFENDANT, SWORN

THE DEFENDANT:  Yes.

THE COURT:  You're now under oath, sir.  You've -- you can lower your hand.  You're now under oath, sir.  You've sworn to tell the truth which means if you lie during this proceeding you can be separately prosecuted for the crime of perjury.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At this time I'm going to have Mr. Russell describe for you the charge to which you intend to plead guilty and the possible penalty for that charge.

Mr. Russell.

MR. RUSSELL:  Mr. Horton, Count I of the indictment charges a violation of Title 18, United States Code, Section 2251(a) which is production of child pornography.  If you're found guilty of that charge the maximum penalty -- because this is a second offense -- is a minimum of 25 years and a maximum of 50 years in prison, a fine of up to $250,000, or both such fine and imprisonment, a term of supervised release of at least five years and potentially life of supervised release, and a $100 special assessment.

The plea agreement also contemplates that you would admit to a forfeiture allegation that is contained in the indictment.  The forfeiture allegation requests forfeiture of various items of property -- excuse me, the forfeiture allegation admits 25 items of property that was used in violation of the statute for which you're pleading.  If you admit to that forfeiture

allegation the maximum penalty is that you would lose all right, title and interest to that property.

Sir, do you understand that nature of the crime charged and the maximum possible penalties?

THE DEFENDANT: Yes.

THE COURT: Having heard the crime charged and the possible penalty is it still your intent to plead guilty?

MR. HANSEN: Do you still want to plead guilty?

THE DEFENDANT: Yes.

THE COURT: I have in front of me a petition to enter a plea of guilty and a plea agreement. Do you have those in front of you?

THE DEFENDANT: Yes.

THE COURT: They appear to have been signed by you.

THE DEFENDANT: Yes.

THE COURT: And that they were signed by you on July 10th; is that correct?

THE DEFENDANT: Yes.

THE COURT: At the time you went over these documents was your attorney with you?

THE DEFENDANT: Yes.

THE COURT: Going to the petition -- the one with the questions and answers in it -- did you read the questions?

THE DEFENDANT: Yes, I did.

THE COURT: Did Mr. Hansen explain the questions to

you?

THE DEFENDANT:  Yes, he did.

THE COURT:  Did you write down your answers?

THE DEFENDANT:  Yes, I did.

THE COURT:  Were the answers you wrote down the truth?

THE DEFENDANT:  Yes.

THE COURT:  After going through the petition did you sign it?

THE DEFENDANT:  Yes.

THE COURT:  Going to the plea agreement, did you read the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Did Mr. Hansen explain the plea agreement to you?

THE DEFENDANT:  Yes, he did.

THE COURT:  Were there any questions about the plea agreement that he was not able to answer?

THE DEFENDANT:  No.

THE COURT:  And after going through the plea agreement did you sign it?

THE DEFENDANT:  Yes, I did.

THE COURT:  On July 10th when you went over the petition and the plea agreement were you under the influence of drugs or alcohol or anything that would impair your thinking?

THE DEFENDANT:  No.

THE COURT:  Are you under the influence of anything right now?

THE DEFENDANT:  No.

THE COURT:  Has anybody threatened you in any way to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anybody promised you anything other than the promises in the plea agreement to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Do you understand, sir, that if the Court accepts your plea of guilty you will be found guilty of a felony?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you have the right to plead not guilty and make the government try to prove this case at trial?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand you're giving up your trial rights by pleading guilty?

THE DEFENDANT:  Yes.

THE COURT:  You've been represented in this case by Mr. Hansen; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  Do you believe that he's investigated this

case sufficiently so that you know what to do today?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with his representation?

THE DEFENDANT: Yes.

THE COURT: Do you understand, sir, that if you chose to go to trial in this case you would have the right to counsel representation at that trial at no cost to you?

THE DEFENDANT: Yes.

THE COURT: In other words, Mr. Hansen would be there at that trial, he would represent your interests, and he would never send you a bill for that service. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you chose to go to trial you would have a jury trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand that at that trial you would have the right to see and hear the witnesses who testify against you and to have them cross-examined on your behalf?

THE DEFENDANT: Yes.

THE COURT: Do you understand that at the trial you would have the right to call witnesses for you and if they would not come voluntarily you could get a court order called a subpoena to make them come and testify?

THE DEFENDANT: Yes.

THE COURT: Do you understand that at the trial you could testify yourself if you wanted to or you could exercise your right to remain silent?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if you remain silent at the trial the jury would not consider your silence in deciding whether you are guilty?

THE DEFENDANT: Yes.

THE COURT: And finally, sir, do you understand that if you chose to go to trial the government would not get a conviction against you unless it was able to prove to every single juror that you were guilty beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: Are you willing to give up all of those trial rights, including your right to counsel representation at that trial, and plead guilty in this case instead?

THE DEFENDANT: Yes.

THE COURT: With a guilty plea you will have a felony record, and with that felony record comes a loss of civil rights. Those rights include the right to vote, the right to serve in a jury, the right to hold a public office, the right to carry a weapon. You can also lose federal benefits. But you will lose rights. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And knowing that you will lose civil

rights are you willing to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  And, finally, there are community consequences that come with having a felony record.  The ones that come to mind most often are the difficulty with employment and the difficulty with housing.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And knowing that those consequences exist and that the Court can do little to help you with them, are you willing to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  You're looking at a sentence in this case of a minimum of 25 years and up to 50 years in prison, a possible fine of up to $250,000 could be imposed in addition to any term of imprisonment, supervised release of at least five years and up to the rest of your life, and a $100 mandatory special assessment.  Is that your understanding of what you're facing?

THE DEFENDANT:  Yes.

THE COURT:  Has Mr. Hansen explained the sentencing guidelines to you?

THE DEFENDANT:  Yes.

THE COURT:  Has he explained that the guidelines provide the starting point that Judge Kopf will look at in determining what your sentence ought to be?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that Judge Kopf will consider all of your relevant conduct in determining your sentence?

THE DEFENDANT:  Yes.

THE COURT:  In a case such as this he's going to consider any criminal history you may have; the age of the children that were involved in the -- in -- and depicted in the pictures; the number of images.  Those types of things.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And once Judge -- Judge Kopf considers all of your relevant conduct, do you understand he can sentence you within the guidelines you've discussed with Mr. Hansen, but he doesn't have to, he could go above or below those guidelines based upon his findings?

THE DEFENDANT:  Yes.

THE COURT:  Then once Judge Kopf determines how much time you will spend in prison, do you understand you will be required to serve all of that time less no more than 54 days per year for good time served and then only if you earn good time?

THE DEFENDANT:  Yes.

THE COURT:  Then after you serve your time in prison in this case, you will be placed on supervised release for at

least five years and perhaps for the rest of your life.  I want to make sure you know what that means.  As part of your sentencing order in this case Judge Kopf will place rules in the sentencing order that you are required to follow after you serve your prison term for at least five years and perhaps for the rest of your life.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if you violate those rules somebody from the court and our probation office will advise Judge Kopf of that, and for that you could go back to jail?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if you were to violate the law -- in other words, commit another crime while you're still on supervised release crime -- for this crime, your penalty for that separate crime could be greater than it otherwise would've been merely because you were still finishing the sentence on this crime?

THE DEFENDANT:  Yes.

THE COURT:  You will be required to pay a $100 mandatory special assessment.  Were you aware of that?

THE DEFENDANT:  Yes.

THE COURT:  Now, in cases such as this restitution often comes into play and I want to make sure you understand what that is.  If you cause harm to others through your

criminal conduct as part of your sentence you can be ordered to pay for that harm. That is called restitution. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In cases such as this it is not uncommon for the sentencing judge to consider restitution and to order as part of your sentence that you pay for the harm you caused. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You have a plea agreement with the government which outlines your agreement regarding what should happen at the time of sentencing. Do you understand that this agreement is between you and the government and is not necessarily binding on Judge Kopf?

THE DEFENDANT: Yes.

THE COURT: That said, at this time I'm going to have Mr. Russell describe the plea agreement to you. I want you to listen as he does that. I will ask you questions about what he says.

Mr. Russell.

MR. RUSSELL: Your Honor, the plea agreement in this matter is that the defendant would plead guilty to Count I of the indictment. In exchange -- or in -- and in addition, would admit to the forfeiture allegation set forth in the indictment. In exchange, the government would agree to dismiss the

remaining counts of the indictment at the time of sentencing.

The elements of the offense charged and a factual basis, they are both set forth in the indictment in addition to the penalties and the fact that this agreement is limited to the United States Attorney's Office for the District of Nebraska and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.

Your Honor, this is an 11(c)(1)(C) agreement.  There is an agreed-to sentence that the defendant would receive a sentence of 336 months or 28 years.  In addition, the defendant does acknowledge that restitution will be ordered as part of the plea agreement if so ordered by the Court.

There is also an acceptance of responsibility provision in the plea agreement.  And also the fact that the defendant may not request or recommend any additional downward departures, variances or adjustments either under the sentencing guidelines or Title 18 United States Code Section 3553.

There is an appeal -- a waiver of appeal and collateral attack set forth in the plea agreement which limits the defendant's rights under those -- in those two areas.

The defendant also agrees to waive his right to withdraw his plea of guilty pursuant to 11(d) of the Federal Rules of Criminal Procedure.  The defendant may only withdraw his plea of guilty in the event the Court rejects the plea agreement pursuant to Rule 11(c)(5) of the Federal Rules of Criminal

Procedure.

And, Your Honor, I believe those are the main points of the plea agreement.

THE COURT: Mr. Hansen, does that fairly summarize the plea agreement?

MR. HANSEN: Yes, Your Honor.

THE COURT: Mr. Horton, did you listen as Mr. Russell described the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Does his description match your understanding of your agreement with the government?

THE DEFENDANT: Yes.

THE COURT: A moment ago I was talking to you about all of the things that Judge Kopf will consider in determining your sentence. Do you recall that discussion?

THE DEFENDANT: Yes.

THE COURT: Now, you and the government have agreed that the sentence in this case will be 336 months. Do you understand that that is an agreement between you and the government?

THE DEFENDANT: Yes.

THE COURT: Do you understand that Judge Kopf will consider all of the things that I've talked about a moment ago and he's going to -- after making that consideration -- decide whether he agrees to -- that the amount of 336 months is

appropriate?  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if he considers all of the factors we've discussed and he decides that 336 months is not the appropriate sentence you'll be allowed to withdraw your plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if he decides that that is the appropriate sentence, that will be your sentence and you will not be allowed to withdraw your plea of guilty?  Do you --

THE DEFENDANT:  Yes.

THE COURT:  -- understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  You have a waiver of appeal and collateral attack.  I want to make sure you know what you're giving up here.  Everything that's done by this court is subject to being looked at by another court to make sure it was done right.  The process is called an appeal.  The court that looks at it is the Eighth Circuit Court of Appeals.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that under the terms of this plea agreement you're giving up your right to that appeal process unless you can show that Mr. Hansen provided you with

ineffective assistance of counsel?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand you're giving up your right to that -- that appeal process with that one exception, both as to your conviction and as to your sentence?

THE DEFENDANT:  Yes.

THE COURT:  Having considered your options, have you decided to waive your right to appeal as we've just discussed?

THE DEFENDANT:  Yes.

THE COURT:  Collateral attack is a different type of proceeding.  With a collateral attack proceeding you can challenge your conviction and your sentence by claiming your constitutional rights were violated.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that under the terms of this plea agreement you're giving up your right to that type of proceeding, both as to your conviction and as to your sentence, unless you can show that what you're admitting to here today is not a crime or you can show that the -- that Mr. Hansen provided you with ineffective assistance of counsel?

THE DEFENDANT:  Yes.

THE COURT:  To make it quite simple, sir, what you're doing here today, unless Judge Kopf lets you -- or decides that the 336 months is the improper sentence -- what you are doing here today is permanent and you can only get out of it with

limited and difficult-to-prove exceptions.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Having considered all of your options, is that what you've decided to do?

THE DEFENDANT:  Yes.

THE COURT:  Has anybody made any promises to you that are not in this plea agreement?

THE DEFENDANT:  No.

THE COURT:  Do you understand, sir, that whether you plead guilty or whether you're found guilty at trial you could receive the same sentence?

THE DEFENDANT:  Yes.

THE COURT:  Putting it a different way, do you understand there is no guarantee your sentence will be less because you pled guilty?

THE DEFENDANT:  Yes.

THE COURT:  At this time then I'm going to have Mr. Russell describe the factual basis for your plea.  I ask you to listen while he does that.  I will ask you questions about what he says.

Mr. Russell.

MR. RUSSELL:  Your Honor, the evidence in this matter would show that on October 8th of 2014, investigators from the Nebraska State Patrol and the CODE, C-O-D-E, Drug Task Force

executed a search warrant at the defendant's residence in Stratton, Hitchcock County, Nebraska. At that time various items of computer equipment and camera equipment that have been listed in the forfeiture allegation were seized from the residence. The equipment located was manufactured outside the state of Nebraska and then transported into Nebraska through interstate and foreign commerce.

A forensic examination of a Seagate FreeAgent GoFlex Desk external hard drive which was manufactured in China, revealed approximately 12 videos of the defendant and a minor female which is identified as victim one. Victim one pertains to a video which was taken at the residence of the defendant and is designated with the moniker M2U00102.mpg.

Your Honor, this is a 30-minute long video and it is more specifically described in the plea agreement. For the purpose of this hearing I'll merely indicate that the video contains the defendant and the minor female engaged in intercourse which is defined as child pornography under federal law. The defendant was holding the camera and -- and was basically running the video.

The forensic examination also revealed other videos of the defendant and victim one, in addition to another victim contained on the -- on the hard drive.

The videocamera seized at the defendant's residence was also manufactured outside the state of Nebraska and was shipped

in interstate and foreign commerce.

In addition to that, Your Honor, information from the victim indicated that the video was taken between on or about April 1st of 2013 to on or about September 1st of 2013, again at the defendant's residence in Stratton, Nebraska.

For purposes of the sentencing enhancement, the investigation would determine that the defendant had been previously convicted of sexual assault of a child, a Class IV Felony, in Jefferson County, Colorado, on May 17th, 1995.

THE COURT:  There's also a victim number two in here that we're discussing.  Is that relevant to what we need to talk about right now?

MR. RUSSELL:  It is not -- it is not relevant to the issue of Count I.

THE COURT:  Okay.

MR. RUSSELL:  It is -- it is relevant -- it may be relevant for sentencing, but it's not relevant to the issue of Count I.

THE COURT:  All right.  Thank you.

Mr. Hansen, did you listen -- well, Mr. Hansen, do you agree that if this case went to trial that evidence would go before a jury?

MR. HANSEN:  Yes, Your Honor.

THE COURT:  Mr. Horton, did you listen as Mr. Russell described the evidence against you?

THE DEFENDANT:  Yes.

THE COURT:  Is what he said the truth?

THE DEFENDANT:  Yes.

THE COURT:  In October of 2014, were you living here in Nebraska?

THE DEFENDANT:  Yes.

THE COURT:  At the time you were living here in Nebraska did law enforcement come and search your home?

THE DEFENDANT:  Yes.

THE COURT:  When they came to --

MR. RUSSELL:  Your Honor, excuse me.  I don't think I specified at the time that the video was made in Count I the victim at that time was 17 years of age.

THE COURT:  Okay.  When law enforcement came to your home on October 8th of 2014, did they search the home?

THE DEFENDANT:  Yes.

THE COURT:  When -- when they searched the home did they find videos and other images depicting child pornography?

THE DEFENDANT:  Yes.

THE COURT:  Among those images was there a video that had been taken of you engaging in sexually explicit conduct with a minor female?

THE DEFENDANT:  Yes.

THE COURT:  Was that minor female 17 years of age?

THE DEFENDANT:  Yes.

THE COURT: Had you previously been convicted of a crime of sexual assault of a child?

THE DEFENDANT: Yes.

THE COURT: There are items listed in the -- one more question. With respect to the computer equipment and the video equipment that was being used in your home and containing these images, was that equipment transported into the state of Nebraska from other states or countries?

THE DEFENDANT: Yes.

THE COURT: Going to the forfeiture allegation, there's a listing of 25 items that were seized from the home during that search. Do you agree that this property was property that was being used by you for the illegal conduct of child pornography?

THE DEFENDANT: Yes.

THE COURT: And should it therefore in your mind be forfeited to the government as items that you used for your illegal conduct?

THE DEFENDANT: Yes.

THE COURT: Any additional questions?

MR. RUSSELL: No, Your Honor.

THE COURT: Mr. Hansen?

MR. HANSEN: No, Your Honor.

THE COURT: Mr. Russell, do you believe the guilty plea is knowing, intelligent and voluntary and that there is a

factual basis for it?

MR. RUSSELL:  I do, Your Honor.

THE COURT:  Mr. Hansen, do you agree?

MR. HANSEN:  Yes, Your Honor.

THE COURT:  Mr. Horton, do you want this Court to accept your plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any questions of me before I proceed?

THE DEFENDANT:  No.

THE COURT:  To the charge that during a time period between April 1st of 2013 and September 1st of 2013, in the District of Nebraska, you a person who had been previously convicted of sexual assault of a child did in fact persuade and induce a person under the age of 18 to engage in sexually explicit conduct for the purposes of producing a video depiction of that conduct, and that you did in fact use items to do that that had been shipped and transported into this state through interstate commerce, what do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  I do find that your guilty plea is knowing, intelligent and voluntary and that there is a factual basis for it and I will recommend to Judge Kopf that he accept your plea of guilty.

Now as to the forfeiture allegation, do you agree that the

25 items listed in the forfeiture allegation should be forfeited to the United States government as property that you used for illegal conduct?

THE DEFENDANT:  Yes.

THE COURT:  I will also recommend that your -- that he accept your plea agreement.  He'll take up the issue of your plea agreement at the time of sentencing.  Sentencing date that we're looking at at this time is October 21st at 12:30 p.m.  Does that work for everyone?

MR. RUSSELL:  Did you say October 21st?

THE COURT:  Uh-huh.

MR. RUSSELL:  Yes, Your Honor, that works.

THE COURT:  Does that work for you?

MR. HANSEN:  Yes, Your Honor.

THE COURT:  All right.  Is there anything else we need to take up?

MR. RUSSELL:  No, Your Honor.

MR. HANSEN:  No, Your Honor.

THE COURT:  We are in recess.

    (3:46 p.m., recessed.)

    I, Vicki L. Jarchow, Transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Vicki L. Jarchow                    August 17, 2015
                                         Date